1  Keith E. Butler (State Bar No. 200496)
   Jeffrey N. Gesell (State Bar No. 200174)
2  CLAUSEN MILLER P.C.
   2040 Main Street, Suite 500
3  Irvine, CA 92614
   Telephone (949) 260-3100
4  Facsimile (949) 260-3190

5  Attorney for Defendant
   LEXINGTON INSURANCE COMPANY,
6  INC.

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT, SAN DIEGO

10

11 CITY OF SAN DIEGO, a Municipal      CASE NO.   '07CV 0475    DMS NLS
   Corporation,
12                                      NOTICE OF REMOVAL OF
                Plaintiff,              ACTION
13
   vs.
14
   LEXINGTON INSURANCE COMPANY;
15 and DOES 1-25, inclusive,

16              Defendants.

17

18         TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19         PLEASE TAKE NOTICE that Defendant LEXINGTON INSURANCE

20 COMPANY ("Lexington") hereby removes to this Court, the state court action

21 described below.

22         1.    On November 16, 2006, Plaintiff CITY OF SAN DIEGO

23 (hereinafter "Plaintiff" or "City") filed a civil action against Lexington; and DOES 1

24 through 25 inclusive, in the Superior Court of the State of California for the County of

25 San Diego, entitled City of San Diego v. Lexington Insurance Company, Case No.

26 GIC 875706.

27         2.    A copy of the City's complaint and a state court summons were

28 served upon Lexington by personal service on February 14, 2007.  Lexington did not

                                     -1-

1  receive a copy of the complaint prior to February 14, 2007. *See* Declaration of James

2  Isherwood filed herewith. A true and correct copy of Plaintiff's Complaint together

3  with the Notice of Service of Process are attached hereto as Exhibit "1" and are

4  incorporated herein by reference.

5      3.    Plaintiff admits that at all relevant times, both at the

6  commencement of the state court action and at the time of filing of this notice of

7  removal, it was and is a "California Charter City duly organized and existing by virtue

8  of the laws of the State of California." *See* Exhibit "1," paragraph 1.

9      4.    At all relevant times, both at the commencement of the state court

10  action and at the time of filing of this notice of removal, Defendant Lexington was and

11  is a corporation formed and existing under the laws of the State of Delaware, with its

12  principal place of business in Boston, Massachusetts.

13     5.    Lexington is a "non-admitted" or "surplus lines" insurer in

14  California. A "non-admitted" or "surplus lines" insurer is not licensed by the State of

15  California and can only conduct business through a surplus lines broker. California

16  Insurance Code §1764.1. *See* Declaration of James Isherwood filed herewith.

17     6.    Lexington does not own or rent any property in California.

18  Lexington's offices and principal place of business are located at 100 Summer St. in

19  Boston, Massachusetts. *See id.*

20     7.    Lexington has no employees in California. *See id.*

21     8.    The premiums associated with the policies issued are sent by

22  insureds through their brokers to Lexington in Boston, Massachusetts or London,

23  England. In this instance, the premium was sent to Lexington in London, England.

24  *See id.*

25     9.    Attached hereto is a true and correct copy of the A.M. Best listing

26  for Lexington. The A.M. Best listing reflects that Lexington is incorporated in

27

28

1   Delaware and has its principal place of business in Boston, Massachusetts.  *See*
2   Exhibit "2," A.M. Best Ratings and Analysis.

3         10.    Accordingly, Defendant Lexington is a citizen of Delaware and
4   Massachusetts pursuant to 28 U.S.C. § 1332(c)(1).

5         11.    The City seeks damages in excess of $75,000.00, exclusive of
6   interest and costs.  The City alleges causes of action for Breach of Contract, Breach of
7   the Implied Covenant of Good Faith and Fair Dealing, Injunctive Relief and
8   Restitution.  According to the City's complaint, the "Cedar fire" of late October and
9   early November 2003 covered Qualcomm Stadium in the City of San Diego with "a
10  thick layer of fire ash."  *See* Exhibit "1," ¶ 17.  The City alleges that "[t]he fire ash
11  that covered the playing field, parking lot, and seating at Qualcomm Stadium
12  prevented its use by the teams scheduled to play in the" Monday Night Football game
13  between the Miami Dolphins and the San Diego Chargers on October 27, 2003.  *Id.,*
14  ¶¶ 14, 18.  The City further alleges that the NFL decided to move the Monday Night
15  Football game from San Diego to Phoenix Arizona "due in substantial part to the ash
16  from the Cedar Fire falling on … Qualcomm Stadium."  *Id.,* ¶ 20.  The City claims
17  that "[t]he loss of the [Monday Night Football Game] after it was moved to Arizona
18  caused CITY to sustain a loss of business revenue …"  *Id.,* ¶ 22.  The City's
19  complaint seeks that loss of business revenue, together with attorneys' fees, punitive
20  damages and restitution.  *Id.,* ¶¶ 11-36; Prayer.

21        12.    On September 13, 2004, the City submitted a "final report on the
22  City business interruption loss due to the loss of the San Diego Chargers' Monday
23  night football game."  According to the City, the net revenue loss was $567,499.  A
24  true and correct copy of the City's September 13 letter and attached report concerning
25  alleged income losses is attached hereto as Exhibit "3" and is incorporated herein by
26  reference; *see* Declaration of James Isherwood filed herewith.

27

28

13.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by these moving parties pursuant to 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.    28 U.S.C. §1331; §1332; §1441(a); §1441(b); §1446(b).

WHEREFORE, Lexington prays that the above-entitled cause, currently pending in the Superior Court of the State of California, in and for the County of San Diego, be removed to the United States District Court for the Southern District of California, and that this cause proceed in this Court as an action properly so removed.

DATED: March 13, 2007              CLAUSEN MILLER P.C.


BY _____
            Keith E. Butler

Attorneys for Defendant
LEXINGTON INSURANCE
COMPANY

56188.1

-4-

**EXHIBIT 1**



CORPORATION SERVICE COMPANY

# Notice of Service of Process

KUB / ALL
Transmittal Number: 5004941
Date Processed: 02/14/2007

**Primary Contact:** Kenneth V. Harkins Esq.
American International Group, Inc.
175 Water Street
Floor 18TH
New York, NY 10038

| | |
|---|---|
| **Entity:** | Lexington Insurance Company<br>Entity ID Number 1903911 |
| **Entity Served:** | Lexington Insurance Company |
| **Title of Action:** | City of San Diego vs. Lexington Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | San Diego County Superior Court, California |
| **Case Number:** | GIC 875706 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/14/2007 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | R. Clayton Welch<br>619-533-5800 |



AMERICAN HOME CLAIMS LITIGATION

FEB 1 9 2007

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com



RECEIVED

Dept. DMS LEGAL

**Exhibit 1**
**Page 5**

# SUMMONS
## (CITACIÓN JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LEXINGTON INSURANCE COMPANY, and DOES 1 through 25, inclusive

NOV 21 '06 AM 1142

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CITY OF SAN DIEGO, a Municipal Corporation,

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*<br>GIC 875706 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
HALL OF JUSTICE
330 W. BROADWAY
SAN DIEGO, CA 92101-3827

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
MICHAEL J. AGUIRRE, City Attorney
R. CLAYTON WELCH, Deputy City Attorney          SBN 147484
1200 Third Avenue, Suite 1100
San Diego, CA 92101

TERESA CASTILLO

| DATE:<br>*(Fecha)* | 11-21-06 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* LEXINGTON INSURANCE COMPANY
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

INDEPENDENT CALENDAR CLERK
330 W. Broadway
San Diego, CA 92101

TO:

R. CLAYTON WELCH
OFFICE OF THE SAN DIEGO CITY ATTORNEY
1200 THIRD AVE, STE 1100
SAN DIEGO, CA  92101

| | | |
|---|---|---|
| CITY OF SAN DIEGO | **Case No.:** GIC875706 | |
| Plaintiff(s) | **NOTICE OF CASE ASSIGNMENT** | |
| vs. | | |
| LEXINGTON INSURANCE COMPANY | Judge: STEVEN R. DENTON | |
| Defendant(s) | Department: 73 | |
| | Phone: 619-685-6119 | |

COMPLAINT FILED  11/16/06

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil consists of all cases except:  Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing.  This is a mandatory document and may not be substituted by the filing of any other document. (Rule 2.5)

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.) (Rule 2.6)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (Rule 2.7)

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE.  MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS.  SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE.  THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO TO ARBITRATION PURSUANT TO CCP 1141.10.  THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING.

ALSO SEE THE ATTACHED NOTICE TO LITIGANTS.

### CERTIFICATE OF SERVICE

I certify that I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by personally handing it to the attorney or their personal representative at    SAN DIEGO California.

DATED: 11/16/06                           BY:  CLERK OF THE SUPERIOR COURT

SDSC CIV-721(Rev 7-03)          ASG-NOTICE OF CASE ASSIGNMENT

**Exhibit 1
Page 7**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| MICHAEL J. AGUIRRE, City Attorney R. CLAYTON WELCH, Deputy City Attorney   SBN 147484 1200 Third Avenue, Suite 1100 San Diego, CA 92101-4100 | |

TELEPHONE NO.: (619) 533-5800    FAX NO.: (619) 533-5856

ATTORNEY FOR *(Name):* Plaintiff, City of San Diego

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 WEST BROADWAY
MAILING ADDRESS: 330 WEST BROADWAY
CITY AND ZIP CODE: SAN DIEGO, CA 92101-3827
BRANCH NAME: CENTRAL

CASE NAME: City of San Diego v. Lexington Insurance Company, and Does 1 through 25, inclusive

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 875706 |
|---|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | JUDGE: DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

4. Number of causes of action *(specify):* One (1)

5. This case ☐ is ☒ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 16, 2006

R. CLAYTON WELCH
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

American Legal Net Inc.
www.USCourtForms.com

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

FEB-14-2007  07:22         1619 2600316         96%         P.04

**Exhibit 1
Page 8**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 201.8(c) and 227 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 1800 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice- Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ-Administrative Mandamus
    Writ-Mandamus on Limited Court Case Matter
    Writ-Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court Rules 1800-1812)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

American Legal Net, Inc.
www.USCourtForms.com

Exhibit 1
Page 9

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

INDEPENDENT CALENDAR CLERK
330 W. Broadway
San Diego, CA 92101

TO:

| CITY OF SAN DIEGO | Case No.: GIC875706 |
|---|---|
| Plaintiff(s) | **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** |
| vs. | (CRC 1590.1) |
| LEXINGTON INSURANCE COMPANY Defendant(s) | Judge: STEVEN R. DENTON |
| | Department: 73 |

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program
☐ Private Neutral Evaluation
☐ Private Mini-Trial
☐ Private Summary Jury Trial
☐ Private Settlement Conference With Private Neutral
☐ Other (specify): _____

☐ Court-Ordered Nonbinding Arbitration (Cases valued at $50,000 or less)
☐ Court-Ordered Binding Arbitration (Stipulated)
☐ Private Reference to General Referee
☐ Private Reference to Judge
☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

Alternate: (mediation & arbitration only) _____

Date: _____    Date: _____

Name of Plaintiff    Name of Defendant

Signature    Signature

Name of Plaintiff's Attorney    Name of Defendant's Attorney

Signature    Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, Rule 225. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

IT IS SO ORDERED.

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Use of Alternate Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

## ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court has established a Civil Mediation Program to replace the Mediation Pilot Program established by Code of Civil procedure sections 1730 et seq. The Civil Mediation Program, in effect for cases filed on or after May 1, 2003 or upon stipulation, is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participate in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute -- the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for court-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter III and Code of Civil Procedure 1141 et seq. address this program specifically.

SDSC CIV-730 (Rev. 11-04)

Exhibit 1
Page 11

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Use Alternative Dispute Resolution Process" which is included in this ADR Package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 338-2797.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

**Exhibit 1
Page 12**

1  MICHAEL J. AGUIRRE, City Attorney
   R. CLAYTON WELCH, Deputy City Attorney
2  California State Bar No. 147484
       Office of the City Attorney, Civil Division
3      1200 Third Avenue, Suite 1100
       San Diego, California 92101-4100
4      Telephone: (619) 533-5800
       Facsimile:  (619) 533-5856
5

6  Attorneys for Plaintiff City of San Diego

7

8             SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9

10                CIVIL DIVISION, CENTRAL COURTHOUSE

11 CITY OF SAN DIEGO, a Municipal          )  CASE NO.              875706
   Corporation,                           )
12                                        )  COMPLAINT FOR:  BREACH OF
                  Plaintiff,              )  CONTRACT; BREACH OF THE
13                                        )  COVENANT OF GOOD FAITH AND
        v.                                )  FAIR DEALING; INJUNCTIVE RELIEF
14                                        )  and RESTITUTION
   LEXINGTON INSURANCE COMPANY, and )
15 DOES 1 through 25, inclusive,          )  *Unlimited Civil Case;*
                                          )  Amount demanded
16                Defendants.             )  exceeds $25,000.00
                                          )
17 _____)

18        Comes now plaintiff CITY OF SAN DIEGO ("CITY") and files its Complaint against

19 defendant LEXINGTON INSURANCE COMPANY ("LEXINGTON") and DOE defendants 1

20 through 25, inclusive, alleging as follows:

21                           GENERAL ALLEGATIONS

22        1.      CITY is a California Charter City duly organized and existing by virtue of the

23 laws of the State of California.

24        2.      At all times material herein, LEXINGTON is, and was, an insurer authorized in

25 and by the State of California to issue and deliver policies covering property and casualty claims

26 by its insureds.

27        3.      This is a matter of unlimited jurisdiction insofar as it involves a claim by CITY

28 for money damages in excess of $25,000.

                                             1
                COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
                GOOD FAITH & FAIR DEALING, INJUNCTIVE RELIEF and RESTITUTION

4.    The true names and capacities, whether individual, corporate or otherwise, of defendants named herein as DOES 1 through 25, inclusive, are unknown to CITY, which is informed and believes, and thereon alleges, that each of said fictitiously named defendants is liable to CITY in some manner in the causes of action herein alleged, and, therefore, CITY sues such defendants by said fictitious names.  CITY will move to amend this complaint when the true names and capacities of said fictitiously named defendants have been ascertained.

5.    CITY is informed and believes, and on this information and belief alleges, that at all times herein mentioned, each defendant herein was the agent and/or employee of each of the other defendants named herein, and in doing the things herein mentioned, was acting within the scope of his/her/its authority of such agency and/or employment, and with the permission and consent of said other defendants.

6.    At all times herein CITY was a member of the California State Association of Counties, Excess Insurance Authority ("CSAC EIA").

7.    Prior to December 31, 2001, CITY, through CSAC EIA, purchased property and casualty coverage under a policy of insurance issued by defendants, and each of them, policy number EIAPPR02-05 (the "Policy").

8.    The Policy had effective dates of coverage for a period commencing December 31, 2001, and continuing through March 31, 2005.

9.    CITY is informed and believes, and on this information and belief alleges, that the Policy was delivered to CITY in the State of California and that all premiums paid by CITY for the Policy were paid in the State of California.

10.    CITY is a named insured under the Policy, as set forth in Endorsement No. A-VIII, Named Insured Endorsement, CSAC VIII, which Endorsement is incorporated into the Policy and attached hereto as part of Exhibit "A".

## FIRST CAUSE OF ACTION

### (Breach of Contract)

11.    For a first cause of action CITY alleges against defendants, and each of them, as follows and incorporates hereinbelow by reference paragraphs 1 through 10, above.

2

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING, INJUNCTIVE RELIEF and RESTITUTION

FEB-14-2007   07:23                          1619 2600316                          96%                          P.10

Exhibit 1
Page 14

12.    The Policy provides, in pertinent part, as follows:

Section III

INTERRUPTION OF BUSINESS EARNINGS/EXTRA
EXPENSE AND RENTAL INCOME

Subject to the terms, conditions and exclusions stated elsewhere herein, this Policy insures:

1)    BUSINESS INTERRUPTION

Against loss resulting directly from Interruption of Business, Services or Rental Value Per Schedule on file with The Company caused by direct Physical Loss or Damage, as covered by this Policy to real and/or personal property, occurring during the term of this Policy.

2)    EXTRA EXPENSE:

This Policy is extended to cover the necessary Extra Expenses, at any location, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the normal operation of the Insured's Business following damage to or destruction of real or personal property, which property is on premises owned, leased or occupied by the Insured. In the event of such damage or destruction the Company shall be liable for such necessary Extra Expense incurred for only such length of time, as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged or destroyed . . . .

* * * * *

4)   CONDITIONS APPLICABLE TO BUSINESS
INTERRUPTION/EXTRA EXPENSE AND RENTAL VALUE:

* * * * *

D.   INGRESS/EGRESS

This policy is extended to insure the actual loss sustained during the period of time not exceeding four consecutive weeks when as a direct result of a peril insured against by this Policy ingress or egress from property insured by this Policy is thereby prevented.

* * * * *

////
////
////
////

Exhibit 1
Page 15

3

I   EXTENDED PERIOD OF INDEMNITY EXTENSION

Subject to the terms, conditions and exclusions of the Policy to
which this Extension is attached and to the following
conditions, the Business Interruption and/or Extra Expense
and/or Rental Value coverage provided by this Policy is
extended to provide coverage for the additional length of time
required to restore the business of the Insured to the condition
that would have existed had no loss occurred commencing on
either:

    i.    the date on which the Company's
        liability would otherwise terminate or;

    ii.   the date on which rebuilding, repairing
        or replacement of such property as has
        been lost, damaged or destroyed is
        actually completed,

whichever the latter [sic].

The Company liability under this Extension shall terminate not
later than twelve (12) months from the commencement date set
forth above.

\* \* \* \* \*

13.   At or about 5:30 p.m. on October 25, 2003, a fire was reported south of Ramona in central San Diego County. This fire (the "Cedar fire") quickly spread throughout large areas of San Diego County and the City of San Diego as a result of Santa Ana wind conditions and, by November 5, 2003, had consumed over 280,000 acres and caused considerable property damage and loss of life within the County of San Diego and City of San Diego.

14.   As of October 25, 2003, the National Football League ("NFL") had scheduled a Monday Night Football game (the "GAME") between the Miami Dolphins and the San Diego Chargers with the GAME to be played the evening of October 27, 2003, at Qualcomm Stadium in the City of San Diego ("Qualcomm Stadium").

15   Several other business entities or concerns had also scheduled use of Qualcomm Stadium's parking lot in the last week of October and first week of November pursuant to use permits requiring said entities or concerns to pay a rental fee related to such uses.

////

////

**Exhibit 1
Page 16**

4
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
GOOD FAITH & FAIR DEALING INJUNCTIVE RELIEF AND DESTITUTION

16.  At all relevant times mentioned herein CITY was the owner of the real property on which Qualcomm Stadium is located and was owner of all improvements and appurtenances situated thereon, including, but not limited to, Qualcomm Stadium itself.

17.  As a direct consequence of the Cedar fire, and commencing in the early morning hours of October 26, 2003, Qualcomm Stadium and surrounding areas were covered with a thick layer of fire ash. This fire ash covered the playing field, parking lot, seating and other portions of Qualcomm Stadium, infiltrated or penetrated the cooling system ducts for the scoreboard and other electrical equipment at Qualcomm Stadium, and infiltrated or penetrated air conditioning equipment and other ducts.

18.  The fire ash that covered the playing field, parking lot, and seating at Qualcomm Stadium prevented its use by the teams scheduled to play in the GAME and by persons intending to attend the GAME, thereby causing direct physical loss of or damage to Qualcomm Stadium. The fired ash on the parking lot also prevented use of the parking lot by the business entities or concerns that had obtained permits from CITY for use of the parking lot.

19.  Furthermore, the fire ash that infiltrated and penetrated the cooling system ducts for the scoreboard and other electrical equipment and infiltrated or penetrated air conditioning equipment and other ducts at Qualcomm Stadium prevented CITY from using the scoreboard and that other equipment, also causing direct physical loss of or damage to Qualcomm Stadium and preventing its use by the football teams scheduled to play in the GAME and by persons intending to attend the GAME.

20.  The NFL decided to move the GAME to Phoenix, Arizona, prior to the start of the GAME and, as a result, the GAME was not played in Qualcomm Stadium.

21.  CITY is informed and believes, and on this information and belief alleges, that the decision by the NFL to move the GAME was due in substantial part to the ash from the Cedar fire falling on, infiltrating and penetrating and/or otherwise damaging Qualcomm Stadium, its field, parking area and seating, its scoreboard and other electrical equipment, air conditioning and other ducts and other appurtenances.

////

**Exhibit 1
Page 17**

5
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
GOOD FAITH & FAIR DEALING, INJUNCTIVE RELIEF and RESTITUTION

22. The loss of the GAME after it was moved to Arizona caused CITY to sustain a loss of business revenue which CITY would have otherwise received if the GAME had been played, as scheduled, at Qualcomm Stadium in an amount to be proved at trial.

23. In addition to the GAME being moved to Arizona, use of the Qualcomm Stadium parking lot by the several business entities or concerns holding permits for such uses had to be cancelled.

24. The cancellation of use permits issued to the several business entities or concerns also caused CITY to sustain a loss of business revenue which CITY would have otherwise received if the several business entities or concerns holding permits had been able to use the Qualcomm Stadium parking lot as intended.

25. Subsequent to the Cedar fire CITY submitted a claim to LEXINGTON under the Business Interruption provisions of the Policy seeking reimbursement for the loss or interruption of business revenue as described above.

26. LEXINGTON acknowledged receipt of CITY's claim for the loss or interruption of business revenue and requested documentation of that claim, which CITY provided in due course.

27. On August 4, 2004, LEXINGTON advised CITY it had not made a final determination on whether to accept or deny CITY's claim and notified CITY it would be requesting for more specific information in order to enable LEXINGTON to make a coverage determination under the Policy on CITY's claim.

28. More specific information was, in fact, provided by CITY to LEXINGTON, however, on November 16, 2005, and despite documentation provided by CITY establishing its claim with reasonable certainty, LEXINGTON denied CITY's claim in its entirety.

29. CITY is informed and believes, and on this information and belief alleges, that defendants, including, but not limited to, LEXINGTON, failed to conduct a fully complete and reasonable investigation before rejecting CITY's claim and/or unreasonably ignored CITY's proof of the facts and circumstances giving rise to said claim.

////

**Exhibit 1
Page 18**

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
GOOD FAITH & FAIR DEALING, INJUNCTIVE RELIEF and RESTITUTION

30.    CITY is informed and believes, and on this information and belief alleges, that defendants, and each of them, failed, neglected, and refused to:

    A.    Conduct a full, complete and reasonable investigation into the claim submitted by CITY for the interruption and/or loss of business revenue or earnings as a result of the Cedar fire and the facts and circumstances underlying said claim;

    B.    Advise CITY in a timely manner regarding the status of CITY's claim and the need of defendants, and each of them, for additional time to consider, evaluate and respond to CITY's claim; and

    C.    Promptly respond to communications with respect to the claim for the interruption and/or loss of business revenue or earnings as a result of the Cedar fire submitted by CITY.

31.    Had the defendants, and each of them, conducted a full, complete and reasonable investigation into the claim submitted by CITY for the interruption and/or loss of business revenue or earnings as a result of the Cedar fire they would have learned, *inter alia*, the following facts:

    A.    That, as a direct consequence of the Cedar fire, Qualcomm Stadium and the surrounding areas were covered with a thick layer of fire ash starting in the early morning hours of October 26, 2003;

    B.    That this fire ash covered the playing field, parking lot, seating and other portions of Qualcomm Stadium infiltrated or penetrated the cooling system ducts for the scoreboard and other electrical equipment at Qualcomm Stadium and infiltrated or penetrated air conditioning and other ducts and other appurtenances;

    C.    That the fire ash which covered the playing field, parking lot, and seating at Qualcomm Stadium prevented its use by the football teams scheduled to play in the GAME and by persons intending to attend the GAME, thereby causing direct physical loss of or damage to Qualcomm Stadium;

    D.    That the fire ash which infiltrated and penetrated the cooling system ducts for the scoreboard and other electrical equipment at Qualcomm Stadium prevented CITY

7

Exhibit 1
Page 19

1  from using the scoreboard and that other equipment, also causing direct physical

2  loss of or damage to Qualcomm Stadium;

3  E.  That the fire ash which infiltrated or penetrated air conditioning and other ducts

4  and other appurtenances prevented CITY from using the air conditioning and/or

5  ventilation system for employees and fans who would have attended the GAME,

6  also causing direct physical loss of or damage to Qualcomm Stadium;

7  F.  That this direct physical damage or loss was a substantial factor leading to the

8  NFL's decision to move the GAME from Qualcomm Stadium to Arizona;

9  G.  That the fire ash which covered the parking lot at Qualcomm Stadium prevented

10  its use by the several business entities or concerns holding permits for use of said

11  parking lot; and

12  H.  That there was thus coverage for the claim submitted by CITY for the interruption

13  and/or loss of business revenue or earnings as a result of the Cedar fire under the

14  Policy.

15  32.  CITY has performed all if its obligations under the Policy identified above, except

16  for those obligations which, because of the breach by defendants, or any of them, of defendants'

17  obligations under the Policy, CITY has been excused or prevented from performing.

18  33.  Based on the above allegations, and on information and belief, CITY alleges that

19  defendants, and each of them, breached their obligations to CITY under the Policy in the

20  following manner:

21  A.  By unreasonably delaying the making any determination under all potentially

22  applicable coverages as to whether or not any payment was owed by defendants,

23  or any of them, to CITY on its claim for the interruption and/or loss of business

24  revenue or earnings which occurred as a result of the Cedar fire;

25  B.  By failing to conduct a full and complete investigation into the facts and

26  circumstances of CITY's claim for the interruption and/or loss of business

27  revenue or earnings as a result of the Cedar fire;

28  ////

**Exhibit 1
Page 20**

8
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF
GOOD FAITH & FAIR DEALING, INJUNCTIVE RELIEF and RESTITUTION

C.   By failing to pay CITY's claim despite the fact that there was a basis for payment of said claim under the terms and provisions of the Policy; and

D.   By the other acts or omissions of defendants, and each of them, as are alleged hereinabove.

34.   As a result of the failure, neglect and refusal on the part of defendants, or any of them, to conduct a full, complete and reasonable investigation into the claim made by CITY for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire, defendants, and each of them, are estopped from relying upon any subsequently discovered information which might support the rejection of said claim.

35.   As a direct and proximate result of the breach by defendants, and each of them, of their obligations under the Policy, CITY has been damaged in an amount to be proved at trial for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire and for general and other damages also to be proved at trial, including, but not limited to, damages related to the fact that CITY has been required to retain or employ counsel to investigate and present defendants with its claim for interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire.

36.   CITY is informed and believes, and on this information and belief alleges, that the denial of benefits under the Policy, as alleged herein, was vexatious and made without sufficient or reasonable cause, as alleged herein. Pursuant to Insurance Code § 1619, CITY is entitled to an award of reasonable attorney's fees in prosecuting this action in an amount to be proved at the time of trial.

## SECOND CAUSE OF ACTION

(Breach of the Covenant of Good Faith and Fair Dealing)

37.   For a second cause of action CITY alleges against defendants, and each of them, as follows and incorporates hereinbelow by reference paragraphs 1 through 36, above.

38.   CITY is informed and believes, and on this information and belief alleges, that defendants, and each of them, breached the implied covenant of good faith and fair dealing arising out of the Policy, in the following respects:

9

Exhibit 1
Page 21

A.   Defendants, and each of them, unreasonably and without proper cause failed to conduct a full, complete and reasonable investigation into the claim made by CITY for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar;

B.   Defendants, and each of them, unreasonably interpreted the provisions and/or terms of the Policy in a manner calculated to deny benefits due to CITY under the Policy;

C.   Defendants, and each of them, unreasonably refused to pay the claim made by CITY for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar.

39.   The denial of benefits claimed by CITY under the Policy was done by defendants without sufficient or reasonable cause. Defendants, and each of them, knew that payment was due CITY on the claim made by CITY for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire yet failed, neglected or refused to make any payment on said claim and denied said claim in its entirety.

40.   As a direct and proximate result of the unreasonable conduct of the defendants, and each of them, CITY has been required to retain or employ counsel to obtain benefits due to CITY under the Policy.

41.   As a direct and proximate result of the tortious conduct of defendants, and each of them, CITY was damaged and injured. CITY is therefor entitled to recover:

A.   The value of reasonable attorney's fees which were, or might have been, incurred by CITY in obtaining benefits due under the Policy for the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire in an amount to be proved at the time of trial.

B.   For all losses or damages arising from or related to the interruption and/or loss of business revenue or earnings which occurred as a result of the Cedar fire.

42.   The refusal of defendants, and each of them, to meet and/or carry out their obligations under the terms and provisions of the Policy to conduct a full, complete and

10

Exhibit 1
Page 22

1  reasonable investigation into the claim made by CITY for the interruption and/or loss of business
2  revenue or earnings which occurred as a result of the Cedar fire and/or to promptly communicate
3  their coverage position to CITY, as an insured under the Policy, and the acts of their agents, were
4  all done with a conscious disregard of the rights of CITY to receive the benefits due CITY under
5  the Policy. These acts or omissions were done with the knowledge, approval and/or ratification
6  of the defendants, and each of them. The acts and omissions by defendants, and each of them, as
7  alleged herein continued even after CITY protested to defendants and CITY was powerless to
8  obtain compliance from defendants as to their obligations to CITY. As a result of the foregoing,
9  CITY is therefor entitled to recover punitive damages from defendants, and each of them.

10               **THIRD CAUSE OF ACTION**

11     (For Injunctive Relief and Restitution pursuant to Bus. & Professions Code §§ 17200 et seq.)

12         43.     For a third cause of action CITY alleges against defendants, and each of them, as
13  follows and incorporates hereinbelow by reference paragraphs 1 through 42, above.

14         44.     CITY is informed and believes, and on this information and belief alleges, that
15  defendants, and each of them, have engaged in and continue to engage in unlawful claims
16  practices as alleged above.

17         45.     CITY is informed and believes, and on this information and belief alleges, that
18  CITY, as an insured of defendants, has been denied coverage due it under the Policy and will
19  continue to be denied coverage, due to the unlawful claims practices of the defendants, and each
20  of them, as alleged above.

21         46.     CITY is informed and believes, and on this information and belief alleges, that
22  that no adequate remedy at law lies for the continuing violations as alleged above.

23                        **PRAYER**

24     WHEREFORE, CITY prays judgment against Defendants, and each of them, as follows:

25     1.     For damages according to proof for breach of the Policy;

26     2.     For reasonable attorney's fees as allowed by Insurance Code § 1619 based on
27  CITY having to bring this action against defendants;

28  ////

**Exhibit 1**
**Page 23**

3.  For reasonable attorney's fees related to efforts on the part of CITY to obtain benefits due CITY under the terms and provisions of the Policy, as provided by law;

4.  For prejudgment interest according to proof at trial;

5.  For punitive damages in an amount sufficient to deter and make an example of defendants;

6.  For a permanent injunction under the third cause of action, alleged hereinabove, enjoining defendants, their agents, successors and employees and those acting in concert with defendants from engaging in each of the unlawful practices, policies, usages and customs of defendants as were set forth herein;

7.  For reasonable attorney's fees in bringing the claims for injunctive relief set out in the third cause of action, as alleged herein, as provided for in Bus. & Professions code § 17200;

8.  For an award of restitution on the third cause of action herein to all persons who were injured as a result of the unlawful practices, policies, usages and customs of defendants as were set forth herein

9.  For costs of suit incurred herein; and

10.  For such other and further relief as the court deems just and proper.

Dated: November ____ 16 ____, 2006      MICHAEL J. AGUIRRE, City Attorney

By  _____
R. Clayton Welch
Deputy City Attorney
Attorneys for Plaintiff,
City of San Diego

Exhibit 1
Page 24

12
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF

  

 View Ratings: **Financial Strength  Issuer Credit  Securities  Advanced Search**          Other Web Centers: Select On

## Search Results      Page    1 of 1

**1 Rated and non-Rated** companies found, results **sorted** by **Company Name**
Criteria Used: **A.M. Best number: 02350**
To refine your search, please use our Advanced Search or view our Online Help for more information.

[ New Search ]                         View results starting with: A B C D E F G H I J K L M N O P Q R S T U

| Company Information | Financial Strength Ratings | | Issuer Credit Ratings | | |
|---|---|---|---|---|---|
| AMB# ▲ Company Name ▲ | Rating ▲ | Outlook / Implication ▲ | Long-Term ▲ | Outlook/ Implication ▲ | Short-T |
| 02350 Lexington Insurance Company (Property/Casualty - Insurance Company) | A+ | Stable | aa- | Stable | |

**Note:** *Financial Strength Ratings as of 03/09/2007 05:36 PM E.S.T.*

‡ *Financial Strength Ratings (FSR) are sometimes assigned to Property/Casualty - A.M. Best Consolidated Gr*
‡ *Life/Health - A.M. Best Consolidated Groups and Company Consolidated Financial Statements are not assig*

***** *Denotes* *Under Review Best's Ratings*

Visit **Best's Rating Center** for a complete overview of our rating process and methodologies.

**Important Notice:** Best's Ratings reflect our independent opinion, based on a comprehensive quantitative and qualitative evaluation of a company' operating performance and business profile. These ratings are neither a warranty of a company's financial strength nor its ability to meet its financia policyholders. View our entire notice for complete details.

Customer Service | Product Support | Member Center | Contact Info | Careers
About A.M. Best | Site Map | Privacy Policy | Security | Terms of Use | Legal & Licensing

Copyright © 2007 A.M. Best Company, Inc. All rights reserved.
A.M. Best Worldwide Headquarters, Ambest Road, Oldwick, New Jersey, 08858, U.S.A.

**Exhibit 2**
**Page 25**

Case 07-cv-02606-JSR Document 8 03/2007





**The Insurance Information Source**

**Best's Rating Center**

*Member*
Member

| Rating Center |
| Rating Methodology |
| Industry Research |
| Ratings Definitions |
| Search Best's Ratings |
| Press Releases |
| Related Products |
| Industry & Regional |
| Country Risk |
| How to Get Rated |
| Contact an Analyst |

View Ratings: **Financial Strength**  **Issuer Credit**  **Securities**  **Advanced Search**      Other Web Center





**BestMark**
**for Secure-Rated**
**Insurers**

**Find Out More**

**Understanding**
**Best's Ratings**
Business Value &
Consumer Confidence

# Lexington Insurance Company

(a member of American International Group Inc)
**A.M.Best #:** 02350   **NAIC #:** 19437   **FEIN #:** 251149494

Address: 100 Summer Street         Phone: 617-330-1100
        Boston, MA 02110          Web: www.aig.com

Assigned to companies that
have, in our opinion, a superior
ability to meet their ongoing
obligations to policyholders.

## Best's Ratings

**Financial Strength Ratings**    View Definitions       **Issuer Credit Ratings**    View Definitio

Rating: **A+ (Superior)**                               Long-Term: **aa-**
Affiliation Code: **p (Pooled)**                        Outlook: **Stable**
Financial Size Category: **XV ($2 billion or more)**    Action: **Affirmed**
Outlook: **Stable**                                     Date: **June 13, 2006**
Action: **Affirmed**
Effective Date: **June 13, 2006**

* Denotes _Under Review Best's Ratings_

## Reports and News

Visit our NewsRoom for the latest news and press releases for this company and its A.M. Best Group

  **Best's Company Report** - includes Best's Financial Strength Rating and rationale along with
analytical commentary, detailed business overview and key financial data.
**Report Revision Date:** 07/21/2006 (represents the latest significant change).
Historical Reports are available in Best's Company Report Archive.

  **Best's Executive Summary Reports (Financial Overview)** - available in three versions, the
style reports feature balance sheet, income statement, key financial performance tests includ
liquidity and reserve analysis.
**Data Status:** 2006 Best's Statement File - P/C, US. Contains data compiled as of 1/4/2007 (
Checked).

- **Single Company** - five years of financial data specifically on this company.
- **Comparison** - side-by-side financial analysis of this company with a peer group of up to
  companies you select.
- **Composite** - evaluate this company's financials against a peer group composite. Report
  average and total composite of your selected peer group.

**Note:** Adobe Reader is required to view the reports listed above. This software is available fi
Systems Inc. An Excel export option is also available once the report has been opened using

  **Best's Key Rating Guide Presentation Report** - includes Best's Financial Strength Rating
as provided in Best's Key Rating Guide products.
**Data Status:** 2005 Financial Data (Quality Cross Checked).

## Financial and Analytical Products

Best's Property/Casualty Center - Premium Data & Reports
Best's Key Rating Guide - P/C, US & Canada
Best's Statement File - P/C, US
Best's Statement File - Global



**Exhibit 2**
**Page 26**

**EXHIBIT 3**

RECEIVED
SEP 1 2004

LESLIE E. DEVANEY
ANITA M. NOONE
LESLIE J. GIRARD
SUSAN M. HEATH
GAEL B. STRACK
ASSISTANT CITY ATTORNEYS

KERI KATZ
HEAD DEPUTY CITY ATTORNEY

OFFICE OF

# THE CITY ATTORNEY

CITY OF SAN DIEGO

Casey Gwinn
CITY ATTORNEY

CIVIL DIVISION
1200 THIRD AVENUE, SUITE 1100
SAN DIEGO, CALIFORNIA 92101-4100
TELEPHONE (619) 533-5800
FAX (619) 533-5856

September 13, 2004

Robert A. Frey
Vice President, Claims Manager
Driver Alliant Insurance Services
600 Montgomery Street, 9th Floor
San Francisco, CA. 94111-2711

Dear Mr. Frey:

*City of San Diego's Monday Football Losses*
*Due to Firestorm 2003*

Pursuant to your August 9, 2004 e-mail to my office, attached please find the final report on the City's business interruption loss due to the loss of the San Diego Chargers' Monday night football game. Please review and let me know if you have any questions or comments.

We would like to forward this report to McLarens, Young & Lexington Insurance Co., but will await direction from your office.

Thank you for your prompt attention to this matter.

Sincerely yours,

CASEY GWINN, City Attorney

By

Keri Katz
Head Deputy City Attorney

KK:mb
Attachment
cc (w/attachment):
    Ashley Fenton,
    Public Liability Claims Manager
    City of San Diego

**Exhibit 3**
**Page 27**

August 13, 2004

Ms. Keri Katz
Deputy City Attorney
City of San Diego
1200 Third Avenue
San Diego, CA 92101

Dear Ms. Katz:

Barrett Sports Group, LLC (BSG) is pleased to present our preliminary findings to the City of San Diego (City) in connection with the City's pending insurance claim. BSG was retained by the City to assist in evaluating the City's net revenue loss resulting from the relocation of the San Diego Chargers' (Chargers) Monday Night Football game (MNF game) on October 27, 2003, and the cancellation of other Qualcomm Stadium parking lot events.

The City receives revenues as a result of events held at Qualcomm Stadium. As a direct result of the wildfires in the San Diego area, the City advised the National Football League (NFL) on October 26, 2003 that the MNF game could not be played at Qualcomm Stadium without compromising the health and welfare of the spectators. Subsequently, the MNF game was moved to Tempe, Arizona.

## I.   SCOPE OF SERVICES

BSG estimated the expected revenues and expenses associated with hosting a Chargers MNF game and other Qualcomm Stadium parking lot events. An analysis of the potential operations associated with the Chargers MNF game and other Qualcomm Stadium parking lot events was completed to understand the potential net revenues that were not realized as a result of the wildfires. BSG developed assumptions based on: 1) the experience of comparable high attendance NFL games played at the stadium immediately prior to and after the wildfires; 2) the number of tickets already sold to the Chargers' MNF game; and 3) contractual arrangements for scheduled parking lot events. Although the assumptions utilized appear reasonable, it is important to note that because events and circumstances may not occur as expected, there may be significant differences between the actual results and those estimated in this analysis. The specific tasks included:

- Reviewed relevant legal documents, including:

    ✓ 1995 Agreement for Partial Use and Occupancy of San Diego Jack Murphy Stadium
    ✓ Supplement Number One to the 1995 Agreement for Partial Use and Occupancy of San Diego Jack Murphy Stadium
    ✓ Third Amendment to the 1983 Agreement for Concession, Restaurant, and Catering Services at San Diego Jack Murphy Stadium

- Reviewed financial and operating information from Chargers games, including:

**Exhibit 3**
**Page 28**

✓ Stadium Revenues
- Attendance
  - Complimentary Tickets
  - No Show Statistics
  - Turnstile Attendance
- Ticket Sales
- Ticket Surcharge Revenue
- Concessions Revenue
  - General
  - Volume Services America (Centerplate)
    - Concessions
    - Sports Club
    - Catering
- Parking Revenue
- Parking Surcharge Revenue

✓ Stadium Expenses
- Game Day Expenses
  - Police/Fire/Traffic
  - Maintenance/Field
  - Other
- Rent Credits
  - ADA Credits
  - Possessory Interest Tax Credits
  - Other Credits
- Chargers Ticket Guarantee

- Reviewed Qualcomm Stadium parking lot events information, including:

✓ Total Rent Revenue
✓ Ancillary Revenues (if any)

- Estimated Net Revenue Loss

## II.   EVALUATION OF COMPARABLE NFL GAMES

BSG reviewed the financial and operating characteristics of other Chargers games held in 2003 (before and after the scheduled MNF game) and prior years. NFL Monday Night football games are typically sold out or highly attended events. The Chargers MNF game against the Dolphins also represented the homecoming of one of the most popular players in Chargers history, Junior Seau. Based on the number of tickets sold before the day of the game and the high profile nature of this event, BSG evaluated the financial and operating performance of four comparable high attendance games from the 2003 season:

✓ San Diego Chargers vs. Denver Broncos (09/14/03)
✓ San Diego Chargers vs. Minnesota Vikings (11/09/03)
✓ San Diego Chargers vs. Green Bay Packers (12/14/03)

**Exhibit 3**
**Page 29**


Ms. Keri Katz
August 13, 2004
Page 3 of 10

✓ San Diego Chargers vs. Oakland Raiders (12/28/03)

*Attendance*

Table 1 below illustrates actual attendance characteristics of the comparable games.

**TABLE 1**
**CITY OF SAN DIEGO**
**QUALCOMM STADIUM INSURANCE CLAIM**
**ATTENDANCE CHARACTERISTICS**

| | HIGH ATTENDANCE GAMES - ACTUALS | | | | |
| --- | --- | --- | --- | --- | --- |
| | Denver 9/14/2003 | Minnesota 11/9/2003 | Green Bay 12/14/2003 | Oakland 12/28/2003 | Average |
| Tickets Purchased Prior to Day of Game | 65,664 | 66,944 | 67,921 | 67,919 | 67,112 |
| Tickets Purchased Day of Game (Walk-Ups) | 615 | 707 | 429 | 319 | 518 |
| Total Tickets Purchased by Public | 66,279 | 67,651 | 68,350 | 68,238 | 67,630 |
| Tickets Purchased by City - (1) | 1,796 | 652 | 727 | 570 | 936 |
| Total Tickets Purchased | 68,075 | 68,303 | 69,077 | 68,808 | 68,566 |
| Complimentary Tickets | 1,546 | 1,668 | 1,590 | 1,322 | 1,532 |
| Total Tickets Distributed | 69,621 | 69,971 | 70,667 | 70,130 | 70,097 |
| Turnstile Attendance | 65,445 | 64,738 | 64,978 | 62,222 | 64,346 |
| No Show Percentage | 6.0% | 7.5% | 8.1% | 11.3% | 8.2% |

(1) - Tickets purchased by City for the Denver game include ADA tickets.

According to Chargers representatives, there were 68,426 tickets purchased by the public for the MNF game (not including day of game ticket sales). This figure exceeds all other Chargers comparable games for the 2003 season.

*Financial Characteristics*

Table 2 presents the net income generated by comparable high attendance Chargers games held at Qualcomm Stadium during the 2003 season. It should be noted that the Denver Broncos game was held before the wildfires and the three other comparable games were held after the wildfires. Below is a summary overview of key revenues and expenses resulting from Chargers games.

*Revenues*

The City receives revenues as a result of Chargers games held at Qualcomm Stadium. In summary, the contract with the Chargers calls for the City to receive the following:

✓ Rent – 10% of "Gross Income"
  – Ticket Revenue
  – Concessions Revenue
  – Parking Revenue

**Exhibit 3**
**Page 30**

Confidential

Preliminary Draft

TABLE 2
CITY OF SAN DIEGO
QUALCOMM STADIUM INSURANCE CLAIM
EVALUATION OF COMPARABLE GAMES

| | HIGH ATTENDANCE GAMES - ACTUALS | | | | |
|---|---|---|---|---|---|
| | Denver 9/14/2003 | Minnesota 11/9/2003 | Green Bay 12/14/2003 | Oakland 12/28/2003 | Average |
| Tickets Purchased Prior to Day of Game | 65,664 | 66,944 | 67,921 | 67,919 | 67,112 |
| Tickets Purchased Day of Game (Walk-Ups) | 615 | 707 | 429 | 319 | 518 |
| Total Tickets Purchased by Public | 66,279 | 67,651 | 68,350 | 68,238 | 67,630 |
| Tickets Purchased by City - (1) | 1,796 | 652 | 727 | 570 | 936 |
| Total Tickets Purchased | 68,075 | 68,303 | 69,077 | 68,808 | 68,566 |
| Complimentary Tickets | 1,546 | 1,668 | 1,590 | 1,322 | 1,532 |
| Total Tickets Distributed | 69,621 | 69,971 | 70,667 | 70,130 | 70,097 |
| Turnstile Attendance | 65,445 | 64,738 | 64,978 | 62,222 | 64,346 |
| No Show Percentage | 6.0% | 7.5% | 8.1% | 11.3% | 8.2% |
| | | | | | |
| **Revenues** | | | | | |
| Stadium Rent | | | | | |
| Gross Ticket Revenue (10.0%) | $386,536 | $391,877 | $400,761 | $396,893 | $394,017 |
| Net Concessions Revenue (10.0%) | $26,409 | $22,881 | $22,858 | $18,026 | $22,544 |
| Net Parking Revenue (10.0%) | $9,103 | $8,809 | $8,675 | $6,115 | $8,176 |
| | | | | | |
| Total - Stadium Rent | $422,048 | $423,567 | $432,294 | $421,034 | $424,736 |
| | | | | | |
| Surcharges | | | | | |
| Ticket Surcharge ($2.00) | $136,396 | $136,896 | $138,478 | $137,938 | $137,427 |
| Parking Surcharge ($2.00) | $29,466 | $28,772 | $28,308 | $28,478 | $28,756 |
| | | | | | |
| Total - Surcharges | $165,862 | $165,668 | $166,786 | $166,416 | $166,183 |
| | | | | | |
| Other Concessions | | | | | |
| Concessions | $78,385 | $72,183 | $73,892 | $59,782 | $71,061 |
| Sports Club | $5,620 | $4,921 | $5,418 | $3,466 | $4,856 |
| Catering | $12,992 | $13,292 | $15,749 | $12,573 | $13,652 |
| | | | | | |
| Total - Other Concessions | $96,997 | $90,396 | $95,059 | $75,821 | $89,568 |
| | | | | | |
| **Total Revenues** | $684,907 | $679,631 | $694,139 | $663,271 | $680,487 |
| | | | | | |
| **Expenses** | | | | | |
| Game Day Expenses | | | | | |
| Police/Fire/Traffic (Estimated) | $39,000 | $39,000 | $39,000 | $39,000 | $39,000 |
| Maintenance/Field (Estimated) | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| Other (Estimated) | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 |
| | | | | | |
| Total - Game Day Expenses | $71,000 | $71,000 | $71,000 | $71,000 | $71,000 |
| | | | | | |
| Rent Credits | | | | | |
| ADA Credits | $29,583 | $28,498 | $30,847 | $30,761 | $29,922 |
| Possessory Interest Tax Credits - (2) | NA | NA | NA | NA | NA |
| Other Credits - (2) | NA | NA | NA | NA | NA |
| | | | | | |
| Total - Rent Credits | $29,583 | $28,498 | $30,847 | $30,761 | $29,922 |
| | | | | | |
| Total Expenses | $100,583 | $99,498 | $101,847 | $101,761 | $100,922 |
| | | | | | |
| Net Income | $584,324 | $580,133 | $592,292 | $561,510 | $579,565 |
| | | | | | |
| Less: Tickets Purchased by City (Ticket Guarantee) | $98,424 | $31,630 | $36,917 | $27,949 | $48,730 |
| | | | | | |
| Adjusted Net Income | $485,900 | $548,503 | $555,375 | $533,561 | $530,835 |

(1) - Tickets purchased by City for the Denver game include ADA tickets.

(2) - Per agreement with Chargers, the City is responsible for expenses regardless if a specific game is played or not. Credits are not game specific.

Sources: City of San Diego and San Diego Chargers.

Note: Figures have not been audited or otherwise verified.

**Exhibit 3**
**Page 31**

Estimated Net Revenue Loss.Active
9/9/2004

5

**CITY OF SAN DIEGO**
**QUALCOMM STADIUM INSURANCE CLAIM**
**ESTIMATED NET INCOME - OCTOBER 27, 2004 (MNF GAME)**

| | |
|---|---:|
| Tickets Purchased Prior to Day of Game (Actuals) | 68,426 |
| Tickets Purchased Day of Game (Walk-Ups) | 375 |
| Total Tickets Purchased by Public | 68,801 |
| Tickets Purchased by City - (1) | 570 |
| Total Tickets Purchased | 69,371 |
| Complimentary Tickets | 1,532 |
| Total Tickets Distributed | 70,903 |
| Turnstile Attendance | 65,088 |
| No Show Percentage | 8.2% |
| | |
| **Revenues** | |
| Stadium Rent | |
| Gross Ticket Revenue (10.0%) | $402,467 |
| Net Concessions Revenue (10.0%) | $22,897 |
| Net Parking Revenue (10.0%) | $8,690 |
| | |
| Total - Stadium Rent | $434,053 |
| | |
| Surcharges | |
| Ticket Surcharge ($2.00) | $138,742 |
| Parking Surcharge ($2.00) | $28,356 |
| | |
| Total - Surcharges | $167,098 |
| | |
| Other Concessions | |
| Concessions | $74,017 |
| Sports Club | $5,427 |
| Catering | $15,776 |
| | |
| Total - Other Concessions | $95,220 |
| | |
| **Total Revenues** | $696,371 |
| | |
| **Expenses** | |
| Game Day Expenses | |
| Police/Fire/Traffic (Estimated) | $39,000 |
| Maintenance/Field (Estimated) | $25,000 |
| Other (Estimated) | $7,000 |
| | |
| Total - Game Day Expenses | $71,000 |
| | |
| Rent Credits | |
| ADA Credits | $29,922 |
| Possessory Interest Tax Credits - (2) | NA |
| Other Credits - (2) | NA |
| | |
| Total - Rent Credits | $29,922 |
| | |
| **Total Expenses** | $100,922 |
| | |
| **Net Income** | $595,448 |
| | |
| Less: Tickets Purchased by City (Ticket Guarantee) | $27,949 |
| | |
| **Adjusted Net Income** | $567,499 |

(1) - Tickets purchased by City for the Denver game include ADA tickets.
(2) - Per agreement with Chargers, the City is responsible for expenses regardless if a specific game is played or
not. Credits are not game specific.
Sources: City of San Diego and San Diego Chargers.
Note: Figures have not been audited or otherwise verified.

**Exhibit 3**
**Page 32**

Ms. Keri Katz
August 13, 2004
Page 8 of 10

## IV.   OTHER QUALCOMM STADIUM PARKING LOT EVENTS

In addition to the relocation of the MNF game, other Qualcomm Stadium parking lot events were
cancelled due to the effects of the wildfires. The following six events were scheduled at the parking
lot from 10/26/03 through 11/04/03.

- ✓ Porsche Club.
- ✓ San Diego Swap Meet
- ✓ Race Legal Drag Racing
- ✓ VW Ride N' Drive
- ✓ Bike October West
- ✓ RV Show

BSG has estimated the City's estimated loss from the cancellation of other Qualcomm Stadium
parking lot events to equal $25,250. This figure reflects the rental revenues that were to be paid to
the City for the events. No ancillary revenue (e.g., concessions, parking, etc.) was expected to be
collected. In addition, event related expenses were to be paid by the individual event promoters.
Please see Table 4 below for additional details.

### TABLE 4
### CITY OF SAN DIEGO
### QUALCOMM STADIUM INSURANCE CLAIM
### OTHER QUALCOMM STADIUM PARKING LOT EVENTS

| | Porsche Club | San Diego Auto Swap Meet | Race Legal Drag Racing | VW Ride N' Drive | Bike October West | RV Show | Total |
|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | |
| Rent | $1,250 | $3,500 | $1,250 | $1,250 | $6,500 | $11,500 | $25,250 |
| Ancillary | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Revenues** | $1,250 | $3,500 | $1,250 | $1,250 | $6,500 | $11,500 | $25,250 |
| **Expenses** | | | | | | | |
| Operating Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Expenses** | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Revenue Loss** | $1,250 | $3,500 | $1,250 | $1,250 | $6,500 | $11,500 | $25,250 |

Note: Event related expenses paid by event promoter.

## V.   ESTIMATED NET REVENUE LOSS

Table 5 presents the estimated net revenue loss resulting from the cancellation of the MNF game
and other Qualcomm Stadium parking lot events.

**Exhibit 3**
**Page 33**

9

Ms. Keri Katz
August 13, 2004
Page 6 of 10

It should be noted that the adjusted net income for the Denver Broncos game was less than the other games because of the disproportionately high number of tickets purchased by the City under the ticket guarantee.

## III.   ESTIMATED NET REVENUE LOSS – OCTOBER 27, 2003 (MNF GAME)

BSG estimated the net income that would have been generated by the MNF game on October 27, 2003 against the Miami Dolphins. Our estimate was based primarily on the number of tickets actually sold prior to the day of the game and the historical performance of comparable high attendance games. It should be noted that the number of tickets sold prior to the day of the game exceeded the number sold for the comparable high attendance games.

Based on our review of comparable high attendance games and the number of tickets sold before the day of the game, BSG made the following key assumptions in preparing the estimated net revenue loss resulting from the Chargers game:

✓ Tickets Purchased Day of Game – Based on the high number of tickets sold prior to the Green Bay and Oakland games, BSG assumed the day of game ticket sales would be 375. This figure represented the average of the two teams and is below the average of the comparable high attendance games. Given the high profile nature of the game, it is likely that attendance would have approached capacity at 71,034.

✓ Tickets Purchased by the City – Given the fact that the tickets purchased prior to the day of game exceeded all of the comparable high attendance games, BSG assumed the City would have to purchase 570 tickets. This figure reflects the number of tickets purchased for the Oakland game – the lowest amount of the season.

✓ Complimentary Tickets – Complimentary tickets were estimated based on the average of the comparable high attendance games.

✓ No Show Percentage – No show percentage was based on the average of the comparable high attendance games.

✓ ADA Rent Credits – ADA rent credits were estimated based on the average of the comparable high attendance games.

Revenues were based on the attendance assumptions, historical per capita statistics and contractual requirements. The Green Bay game was selected for certain per capita assumptions as this game would likely reflect the expected performance of the MNF game more accurately than the average figure (note: utilization of the average per capitas results in an adjustment of less than $10,000). Expenses were based on historical experience, attendance assumptions, and contractual requirements. Please see Table 3 for estimated net income details.

Estimated Net Income      $567,499

Exhibit 3
Page 34



Ms. Keri Katz
August 13, 2004
Page 5 of 10

✓ Surcharge Revenue
    – Tickets - $2.00 Per Ticket Sold
    – Parking - $2.00 Per Car Parked

✓ Other Concessions Revenue – 15%

*Expenses*

The City is responsible for certain event related expenses and also provides certain rent credits to the Chargers. Below is a summary of key expense items and rent credits.

✓ Game Day Expenses

    – Police/Fire/Traffic – Expenses incurred over and above normal public safety expense incurred by the City.

    – Maintenance/Field – The City is required to incur a portion of day of game expenses required to host the event. The Chargers pay for the majority of day of game expenses.

    – Other

✓ Rent Credits

    – ADA – The City is required to provide the Chargers certain rent credits to offset the losses incurred from the reduced seat inventory resulting from the ADA settlement.

    – Possessory Interest Tax (PIT) Credits/Other Credits – The City provides the Chargers other rent credits by contract. However, the PIT credit and other credits are provided for the season and are not adjusted based on the number of games played. As a result, no adjustment is required on a game-by-game basis.

    – Ticket Guarantee – By contract, the City is required to purchase tickets (or provide a rent credit) to the extent that the Chargers are unable to sell 60,000 general admission seats.

*Net Income*

As presented in Table 2, the City realized adjusted net income as follows:

|  | Adjusted Net Income |
|---|---|
| Denver Broncos | $485,900 |
| Minnesota Vikings | $548,503 |
| Green Bay Packers | $555,375 |
| Oakland Raiders | $533,561 |
|  |  |
| Average | $530,835 |
| High | $555,375 |
| Low | $485,503 |

**Exhibit 3**
**Page 35**

6

# CITY OF SAN DIEGO
## QUALCOMM STADIUM INSURANCE CLAIM
## SUMMARY

| ESTIMATED ADJUSTED NET INCOME | |
|---|---|
| | **Estimate** |
| **Revenues** | |
| Chargers Game | $696,371 |
| Parking Lot Events | $25,250 |
| | |
| **Total Revenues** | $721,621 |
| | |
| **Expenses** | |
| Chargers Game | $100,922 |
| Parking Lot Events | $0 |
| | |
| **Total Expenses** | $100,922 |
| | |
| **Net Income** | $620,698 |
| | |
| Less: Chargers Ticket Guarantee | $27,949 |
| | |
| **Adjusted Net Income** | $592,749 |

**Exhibit 3**
**Page 36**

Estimated Net Revenue Loss.Active
9/9/2004

Ms. Keri Katz
August 13, 2004
Page 10 of 10

## VI.   OTHER POTENTIAL IMPACTS

The operations of the Chargers generate economic and fiscal impacts as their games are held in the City.  This demand results from franchise/facility generated spending (tickets, media, concessions, novelties, etc.), patron spending (restaurants/bars, hotels, gasoline stations, retail establishments, etc.), visiting team personnel spending, and media event personnel spending.  Fiscal impacts, such as sales tax revenues and transient occupancy tax revenues, among others, were diminished as a result of the MNF game's relocation and, to a much lesser extent, the cancellation of the parking lot events.  In addition, the City did not realize the marketing benefits resulting from the national and international exposure of the MNF game.  It was beyond the scope of this assignment to estimate these impacts.

Thank you for the opportunity to work on this interesting and challenging assignment.  Please contact Mr. Daniel S. Barrett at (310) 802-8775 if you have any questions or comments.

Sincerely,

Barrett Sports Group, LLC

By:  Daniel S. Barrett, Member

Exhibit 3
Page 37

PROOF OF SERVICE

1

2        I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2040 Main Street, Suite 500, Irvine, California 92614.

3

4        On March 14, 2007, I served the following document(s) described as **NOTICE OF REMOVAL OF ACTION** by placing a true copy thereof, enclosed in sealed envelope(s), addressed as follows:

5  Michael J. Aguirre, City Attorney
R. Clayton Welch, Deputy City Attorney

6  1200 Third Avenue, Suite 1100
San Diego, California 92101

7

Telephone:  (619) 533-5800

8  Facsimile:  (619) 533-5856

9  *Attorneys for Plaintiff*
*CITY OF SAN DIEGO*

10

11  [X] **BY MAIL:**  I caused such envelope to be deposited in the mail at Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this firm's practice of

12  collection and processing of correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the

13  ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in

14  affidavit.

15  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 14, 2007 at Irvine, California.

16

17

18                    _____

19                    Barbie D. Akin

20

21

22

23

24

25

26

27

28

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS
CITY OF SAN DIEGO

## DEFENDANTS
LEXINGTON INSURANCE COMPANY

FILED

**'07 CV 0475   DMS NLS**   2007 MAR ___ PM 3:05

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Office of the City Attorney, Civil Division
1200 Third Avenue, Suite 1100
San Diego, CA 92101-4100

619-533-5800

ATTORNEYS (IF KNOWN)
Clausen Miller, P.C.
2040 Main Street, Suite 500
Irvine, CA 92614

949-260-3100

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. 28 USC 1332
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)   Plaintiff filed a breach of contract action against its first party property insurer. Plaintiff seeks indemnity for business interruption arising out of the 2003 wildfires and the decision of the NFL to move a Monday Night Football game from Qualcomm Stadium to Arizona. It is the opinion of Defendant Lexington that the claim is not covered.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removal from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 0.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   Docket Number _____

DATE  03/14/07

SIGNATURE OF ATTORNEY OF RECORD  _Nick Biehm_

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

1360096  $350  Sec 3/15/07

**UNITED STATES
DISTRICT COURT**
Southern District of California
San Diego Division

# 136096 — A
March 15, 2007

| Code | Case # | Qty | Amount | |
|------|--------|-----|--------|---|
| CV086900 | 3-07-CV-0475 | | 60.00 CH | |
| Judge | - SABRAW | | | |
| CV086400 | | | 100.00 CH | |
| CV510000 | | | 190.00 CH | |

Total-> 350.00

FROM: CIVIL FILING
CITY OF SAN DIEGO V. LEXINGTON
INSURANCE CO.
BCW 3593 & 44127 SH